IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED FIRE & CASUALTY COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIE J. BILLINGSLEA, JR., CORA BILLINGSLEA, and BUDGET SERVICES & SUPPLIES, LLC,<br><br>    Defendants. | Case No. 5:23-cv-00484-CAR |

**BRIEF IN SUPPORT OF PLAINTIFF UNITED FIRE & CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

United Fire & Casualty Company ("United Fire") is a surety that provided performance and payment bonds on behalf of ML Builders, LLC. Willie J. Billingslea, Jr., Cora Billingslea, and Budget Services & Supplies, LLC agreed to exonerate, hold harmless, indemnify, and keep indemnified United Fire from and against any and all loss incurred by reason of the execution of certain surety bonds. United Fire now moves for summary judgment against Indemnitors as a result of losses and expenses incurred on bonds executed in reliance on obligations of Indemnitors contained in a written indemnity agreement as well as an order of specific performance to require Indemnitors to provide collateral security which is required to hold United Fire harmless from future losses and expenses on the bonds.

## STATEMENT OF MATERIAL FACTS

On December 4, 2019, ML Builders-Budget Services JV, LLC, Shawn McCullough, Jacqueline McCullough, Jonathan McCullough, Willie J. Billingslea, Jr., Cora Billingslea, ML Builders, LLC, and Budget Services & Supplies, LLC (collectively, "Indemnitors") executed an Agreement of Indemnity (the "2019 Indemnity Agreement") in favor of United Fire.[1]

The 2019 Indemnity Agreement, pursuant to its terms was executed as inducement for United Fire's execution of surety bonds on behalf of ML Builders-Budget Services JV, LLC.[2] ML Builders-Budget Services JV, LLC (the "Joint Venture") was a joint venture company established by ML Builders, LLC ("ML Builders") and Budget Services & Supplies, LLC ("Budget Services").[3] The 2019 Indemnity Agreement contemplated surety bonds to be executed exclusively for the "Contractor" which was identified in that document as the Joint Venture.[4]

In January 2020, following the execution of the 2019 Indemnity Agreement, Indemnitors requested a change to the relationship with United Fire such that bonds could be issued to either the Joint Venture, Budget Services, or ML Builders under the same indemnity agreement.[5] On January 15, 2020, pursuant to this request, Kenny Albert, the

---

[1] Ex. A, Declaration of Stephanie Geer ("Geer Decl.") at ¶3, and Exhibit 1 to the Geer Decl. (the "2019 Indemnity Agreement"); Ex. B, Deposition of Willie J. Billingslea ("Willie Depo.") at 36:14-37:17; Ex. C, Deposition of Cora Billingslea ("Cora Depo.") at 17:1-19:16.
[2] Geer Decl. at Ex. 1, 2019 Indemnity Agreement at p. 1.
[3] Willie Depo. at 24:15-27:13
[4] Geer Decl. at Ex. 1, 2019 Indemnity Agreement at p. 3.
[5] Geer Decl. at ¶ 4 and Ex. 2;

agent for the account, emailed Shawn McCullough and Willie Billingslea and provided a new version of the indemnity agreement, representing to them, as follows:

> The new GIA is worded, so we can use the same GIA for the JV, or each company separately. This gets rid of the need to have separate GIA's prepared and signed for each entity. So, by signing this one, we can use it to write bonds for the JV, or ML Builders by themselves, or Budget Services by themselves.[6]

The new indemnity agreement (the "2020 Indemnity Agreement") was executed dated January 21, 2020.[7]

Under the terms of the 2020 Indemnity Agreement, the term "Contractor" was no longer defined, and no one "Contractor" was listed in the 2020 Indemnity Agreement. Instead, the 2020 Indemnity Agreement states that it applies to any bonds executed by United Fire on behalf of any of the Indemnitors, as follows:

> "Bond" means any surety bond, undertaking, recognizance, guarantee, writings or statements or prequalification or commitment, consent of surety or other surety obligation, including modifications or renewals thereof, given, procured, provided, maintained, renewed, modified, or substituted by Surety in the name(s) or at the request of any Indemnitor, solely or as a co-venturer with others, whether before or after the date of this Agreement.")[8]

Under the terms of the 2020 Indemnity Agreement, Indemnitors agreed to "exonerate, hold harmless, indemnify, and keep indemnified Surety from and against any and all Loss and/or liability for Loss."[9] In the event of any claims on the Bonds,

---

[6] Ex. D, Deposition of Kenny Albert (the "Albert Depo.") at 17:3-20 and Ex. D-B.
[7] Geer Decl. at ¶ 5 and Ex. 3 (the "2020 Indemnity Agreement"); Willie Depo. at 45:10-47:1; Cora Depo. at 24:8-25:8.
[8] Geer Decl. at Ex. 3 at ¶ SECOND, subparagraph e.
[9] Id. at ¶ FIFTH.

3

Indemnitors agreed that United Fire "shall have the right, in Good Faith and in its sole discretion, to defend, prosecute, appeal, adjust, settle or compromise any matters comprising, arising from or related to any Claim."[10] Indemnitors further agreed that "The vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the amount of Loss and of the fact and amount of Indemnitors' liability to Surety."[11]

On April 13, 2020, prior to the execution of any bonds at issue, Mr. Albert emailed Shawn McCullough and Willie Billingslea and stated that United Fire was looking for each of them to confirm the following understanding of the 2020 Indemnity Agreement: "The GIA applies to projects my company undertakes by itself, projects the other company undertakes by itself, and projects we undertake together."[12] In response to the April 13, 2020 email from Mr. Albert, Willie Billingslea responded "I confirm we're all in agreement."[13]

Following the execution of the 2020 Indemnity Agreement and pursuant to the updated terms therein, United Fire issued payment and performance surety bonds (the "Bonds") on behalf of ML Builders, LLC, for the following projects (the "Bonded Projects"):[14]

---

[10] Id. at ¶ EIGHTH.
[11] Id. at ¶ FIFTH.
[12] Albert Depo. at 28:6-29:4 and Ex. P-1.
[13] Albert Depo. at 31:3-17 and Ex. P-3; Willie Depo. at 47:23-49:2.
[14] Geer Decl. at ¶ 6.

| Project Owner | Project Name | Bond Number |
|---|---|---|
| Ameresco | NC MACC Building 1016 | 54-242623 |
| Ameresco | NC MACC Building 298 | 54-242615 |
| Archer Western | P695 CNATT Classroom Camp Lejeune | 54-240596 |
| Archer Western | P378 CH-53K Maintenance Hangar | 54-240597 |
| Archer Western | P1800 Marine Expeditionary Force Camp Lejeune | 54-240609 |
| USPS | USPS Building Expansion | 54-240611 |
| VA | Renovate/Expansion Wing 5B | 54-235-80 |
| MICC | MICC—Renovate Building 5385 | 54-235087 |
| Savannah River | 730-B 2nd Floor Renovation | 54-228894 |

On May 15, 2023, United Fire sent each of the Indemnitors a letter notifying them that claims had been asserted on the bonds, reminding them of their obligations under the Indemnity Agreement and making a demand that they exonerate, hold harmless, indemnify and keep indemnified United Fire in accordance with the terms of the 2020 Indemnity Agreement.[15]

On October 10, 2023, United Fire sent Indemnitors a letter demanding that Indemnitors deposit with United the sum of $12,950,000.00 to collateralize United and hold it harmless from and against any and all potential liability for loss on the Bonds.[16] Indemnitors did not deposit any collateral with United Fire.[17]

To date United Fire has paid claims on the Bonds totaling $6,882,989.85.[18] Additionally, United fire has incurred expenses, including attorneys' fees and consultant

---

[15] Geer Decl. at ¶ 7 and Ex. 4; Willie Depo. at 61:5-17.
[16] Geer Decl. at ¶ 8 and Ex. 5; Willie Depo. at 69:16-70:6.
[17] Willie Depo. at 70:7-15.
[18] Geer Decl. at ¶ 9 and Ex. 6 (the "Loss Report") at column labeled "Paid".

5

fees totaling $697,832.17 as a result of the claims on the Bonds.[19] The current reserve set by United Fire, to fund additional losses and expenses on the Bonds, is $9,531,140.33.[20]

Each of the disbursements made by United Fire on the Bonds were made by United Fire in good faith under the belief that United Fire was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements.[21] Indemnitors have failed to hold United Fire harmless, reimburse it for any loss or expense, or to otherwise honor their obligations contained in the 2020 Indemnity Agreement.[22]

Indemnitors admit that they have no knowledge to dispute the amount of the losses, costs or expenses that United Fire has incurred under the Bonds.[23] Further, Indemnitors admit that they have no documents or knowledge to dispute the amount of the collateral demanded by United Fire.[24] Instead, Indemnitors' sole dispute with respect to the claims brought by United Fire in this lawsuit is their "understanding" that the 2020 Indemnity Agreement applied, as follows:

> [I]f I wanted to go out and bid a contract, I could use this -- I could use this bond and I would be liable for it for Budget Services. If we wanted to go out and do one with the joint venture, then Budget Services and ML Builders would be liable for that particular bond. If ML Builders wanted to go out and get a contract, they could do it and they would be liable for that bond.[25]

---

[19] Id. at column labeled "L.A.E."
[20] Id. at column labeled "Current Reserve".
[21] Geer Decl. at ¶ 10.
[22] Geer Decl. at ¶ 11.
[23] Ex. E, Defendant's Responses to Plaintiff's First Requests for Admission at Response No. 2; Willie Depo. at 82:9-21.
[24] Willie Depo. at 82:24-83:10.
[25] Id. at 42:24-43:7.

**ARGUMENT AND CITATION OF AUTHORITIES**

A movant is entitled to summary judgment if "there is no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there really is need for a trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As shown below, there is no genuine issue of any material fact as to 1) United Fire's claim for contractual indemnification against Defendants in the total amount of $7,580,822.02, and 2) the specific performance of Defendants' obligation to deposit additional funds in the amount of $9,531,140.33.

I. **The Indemnity Agreement is Valid and Enforceable.**

The claims asserted by United Fire rely on the validity of the Indemnity Agreement signed by each of the Defendants. Indemnity agreements, such as the one which United Fire seeks to enforce are not unusual, and Georgia courts enforce their provisions in a straightforward manner. The Georgia Court of Appeals "consistently has upheld the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds." *Anderson v. United States Fidelity & Guaranty Co.*, 267 Ga. App. 624, 627, 335 S.E.2d 712, 715 (2004) (collecting cases). *See also M-PAX, Inc. v. Dependable Insurance Co.*, 176 Ga. App. 93, 94-95, 335 S.E.2d 591, 593 (1995); *United Rental Systems, Inc. v. Safeco Insurance Co.*, 156 Ga. App. 63, 67-68, 273 S.E.2d 868, 872 (1980). United States District Courts have similarly enforced surety indemnity agreements. *See Transamerica Ins. Co. v. H.V.A.C. Contractors, Inc.*, 857 F.

Supp. 969 (N.D. Ga. 1994) (holding that a surety was entitled to summary judgment on an indemnity agreement); *Reliance Ins. Co. v. Romine*, 707 F. Supp. 550 (S.D. Ga. 1989), *aff'd* 888 F.2d 1344 (11th Cir. 1990) (finding an indemnification agreement valid and enforceable and granting summary judgment in favor of surety).

### II. United Fire is entitled to a judgment for its actual losses and expenses incurred in the amount of $7,580,822.02.

The 2020 Indemnity Agreement in this case, like those in the cases cited above, contains a broad requirement that the Indemnitors agree to indemnify and hold United Fire harmless against any loss or expenses:

> Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified Surety from and against any and all Loss and/or liability for Loss Indemnitors agree to immediately reimburse Surety in the amount of any payment of Loss made by Surety, plus interest from the date of Surety's payment.[26]

Further, the 2020 Indemnity Agreement contains a "prima facie" clause, which provides that "vouchers or other evidence of any such payments made by Surety shall be prima facie evidence of the amount of Loss and the fact and amount of Indemnitors' liability to Surety."[27]

Summary judgment in favor of the surety is proper following the surety's satisfaction of an indemnity agreement's "*prima facie* evidence" provision when the

---

[26] 2020 Indemnity Agreement at ¶ FIFTH (in ¶ SECOND at subsection h "Loss" is defined as "any and all payments, expenses or liability incurred or anticipated by Surety, including but not limited to attorney's fees, consultant's fees, expert fees, and court costs arising from or related to any Bond, and Claim, enforcing any of Surety's rights under this Agreement, and/or any and all unpaid premiums for any Bond."
[27] Id.

8

indemnitors fail to rebut the presumption. *See, e.g. Anderson*, 267 Ga. App. 624 at 627-28; *Travelers Casualty & Surety Co. of America v. Winmark Homes, Inc.*, 518 Fed. Appx. 899 at 903 (11th Cir. 2013); *Guarantee Co. of North America v. Gary's Grading & Pipeline Co.*, No. 3:15-CV-83(CDL), 2016 WL 1181698, 2016 U.S. Dist. LEXIS 39035 (M.D. Ga. 2016); *Philadelphia Insurance Co. v. Manitou Construction, Inc.*, 115 F. Supp. 3d 1378 (N.D. Ga. 2015); *Western Surety Co. v. Mooney Construction, Inc.*, No. 1:12-cv-01309-WSD, 2013 WL 12098762 (N.D. Ga. Jul. 1, 2013) *see also* Order dated Nov. 14, 2023, 2013 WL 6048721, 2013 U.S. Dist. LEXIS 161977; *affirmed on appeal* 574 Fed. Appx. 865 (11th Cir. 2014); *Cincinnati Insurance Co. v. Tommy L. Griffin Plumbing & Heating Co.*, No. 5:11-CV-166(MTT), 2012 WL 4759086, 2012 U.S. Dist. Lexis 144215 (M.D. Ga. 2012); *Cagle Constr., LLC v. Travelers Indemnity Co.*, 305 Ga. App. 666, 668-669, 700 S.E.2d 658, 661 (2010).

  A. **United Fire has established its *prima facie* case for indemnity.**

The declaration of Stephanie Geer, contains a Loss Report which evidences, by bond and type the losses and expenses incurred by United Fire in the amount of $7,580,822.02. The amounts claimed by United Fire are documented as required by the indemnity agreement's *prima facie* provision and are owed to United Fire under the terms of the agreement. These losses were incurred in two broad categories, including 1) losses of $6,882,989.85 incurred under the terms of the bonds, and 3) expenses of $697,832.17.[28]

---

[28] Geer Decl. at ¶ 9 and Exhibit 6.

When a plaintiff surety has made its *prima facie* showing of indemnitors' liability, the burden lies with the indemnitors to present evidence to create an issue of material fact to avoid summary judgment. *First National Insurance Company of America v. Duncan Pipeline, Inc.*, No. 2:11-CV-85-RWS, 2013 U.S. Dist. LEXIS 22725 (N.D. Ga. Feb. 19, 2013)("Because Plaintiff has established its *prima facie* case, to avoid summary judgment, Indemnitors must show that Plaintiff acted in bad faith or abused its discretion in paying the claims under the Bonds.") Defendants have admitted that that they have no knowledge to dispute the amount of the losses, costs or expenses that United Fire has incurred under the Bonds.[29] There is no dispute in this case as to the amount incurred by United Fire on the Bonded Projects.

**B.    United Fire is entitled to summary judgment pursuant to the terms of the 2020 Indemnity Agreement.**

Rather than dispute the losses and expenses incurred by United Fire, Defendants argue instead that the 2020 Indemnity Agreement should not apply to them because the bonds on which the losses and expenses were incurred were provided to ML Builders and not to the Joint Venture or Budget Services.[30] This reflects a fundamental misunderstanding of the clear language of the 2020 Indemnity Agreement. Under the clear and unambiguous terms of the agreement, Defendants are liable to United Fire for losses and expenses incurred on any bond executed on behalf of any of the named indemnitors, including ML Builders.

---

[29] Ex. E, Defendant's Responses to Plaintiff's First Requests for Admission at Response No. 2; Willie Depo. at 82:9-21.
[30] Willie Depo at 42:24-43:7.

10

In Georgia, if a party executes a contract with clear and unambiguous terms but later claims they did not understand the agreement, the contract will be enforced as written. *Paige v. Jurgensen*, 204 Ga. App. 524, 419 S.E.2d 722 (1992). "Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." *Health Service Centers v. Boddy*, 257 Ga. 378, 380 (359 S.E.2d 659) (1987). A party who had the capacity and opportunity to read a contract cannot later claim that they did not understand the contract's terms. *Primary Investments, LLC v. Wee Tender Care III, Inc.*, 323 Ga. App. 196, 746 S.E.2d 823 (2013). This rule is reinforced by the notion that the intention of the parties is derived from the contract's plain language, and parol evidence is inadmissible to alter the terms of a clear and unambiguous contract absent evidence of fraud, accident, or mistake. *Jurgensen*, 204 Ga. App. 524, 525.

Here, the terms of the 2020 Indemnity Agreement are clear and unambiguous such that no construction is required and no parol evidence can be admitted to alter the terms. The key language of the 2020 Indemnity Agreement which establishes Defendants' liability to United Fire for bonds executed on behalf of ML Builders is contained in the paragraph labeled "Second" which contains the definition of certain defined terms.

"Indemnitors" in the agreement is defined as "all persons who sign or whose authorized representatives sign this Agreement…"[31] ML Builders, is a signatory of the agreement and this fact is not in dispute.

---

[31] 2020 Indemnity Agreement at ¶ SECOND, at subsection d.

11

Next, the term "Bond" is defined as:

> any surety bond, undertaking, recognizance, guarantee, writings, or statements of prequalification or commitment, consent of surety or other surety obligation, including modifications or renewals thereof, given, procured, provided, maintained, renewed, modified, or substituted by Surety **in the name(s) or at the request of any Indemnitors,** solely or as a co-venturer with others, whether before or after the date of this Agreement. [32]

ML Builders signed the agreement as an "Indemnitor" and United Fire then executed certain Bonds following the execution of the 2020 Indemnity Agreement on behalf of ML Builders.[33]

Finally, "Loss" is defined as follows:

> any and all payments, expenses or liability incurred or anticipated by Surety, including but not limited to attorney's fees, consultant's fees, expert fees, and court costs, arising from or related to any Bond, any Claim, enforcing any of Surety's rights under this Agreement, and/or any and all unpaid premiums for any Bond.[34]

Taken together, these three definitions provide a clear and unambiguous meaning of the terms as used in the 2020 Indemnity Agreement. Under the clear and unambiguous meaning of the indemnity paragraph, Defendants are required to indemnify United Fire for losses incurred on any bonds issued to any of the signatories of the 2020 Indemnity Agreement. Despite any misunderstanding of the 2020 Indemnity Agreement's terms, Defendants' obligations were clear from the date of the agreement's execution.

---

[32] Id. at subsection e (emphasis added).
[33] Geer Decl. at ¶ 6.
[34] 2020 Indemnity Agreement at subsection h.

### III. United Fire is entitled to summary judgment on its claim for specific performance of Defendants' obligation to provide collateral security.

A demand for collateral security is enforceable in an order for specific performance. *See e.g., Travelers Cas. and Sur. Co. of America v. Winmark Homes, Inc.*, 518 F. App'x 899 (11th Cir. 2013) (affirming an order of specific performance requiring indemnitors to post an irrevocable letter of credit with surety); *See also Travelers Cas. and Sur. Co. of America v. Desert Gold Ventures, LLC*, No. CV 09-4224 PSG (AJW), 2010 WL 5017798 (C.D. Cal. Nov. 19, 2010) (holding that despite no monetary loss surety entitled to specific performance); *Hartford Fire Ins. Co. v. Universal Import, LLC*, No. 3:08-CV-00271-LRH-RAM, 2009 WL 4042699 (D.Nev. Nov. 20, 2009)(holding no adequate remedy at law and granting specific performance); *Travelers Cas. and Sur. Co. of America v. Grace & Naeem Uddin, Inc.*, No. 08-61868-CIV, 2009 WL 1024239 (S.D.Fla. April 15, 2009)(holding that there was no adequate remedy at law and granting specific performance).

In *Winmark Homes*, the plaintiff surety sought specific performance of defendants' indemnity obligation to provide an irrevocable letter of credit to secure the surety in the amount of undischarged liability under the bonds. Id. at 900. The Eleventh Circuit noted that Georgia courts have consistently upheld the validity and enforceability of surety indemnity agreements and found that the surety was entitled to specific performance. Id. at 902. Further, the Court held that the surety's demand for the letter of credit was not evidence of any bad faith on behalf of the surety. Id.

13

In *Safeco Ins. Co. of America v. Schwab*, 739 F.2d 431 (9th Cir. 1984), the Court held that sureties are "ordinarily entitled to specific performance of collateral security clauses" because "[i]f a creditor is to have the security provision for which he bargained, the promise to maintain the security must be specifically enforced." Id. at 433 (citing Marine Midland Trust Co. v. Alleghany Corp., 28 F. Supp. 680, 684-84 (S.D.N.Y. 1939)).

### A.     United Fire's demand for collateral security is valid and enforceable.

In the 2020 Indemnity Agreement, Defendants' promised:

> Upon written demand by Surety, Indemnitors shall deposit with Surety cash or an irrevocable letter of credit from a bank approved by Surety in a form acceptable to Surety (hereinafter "Collateral Deposit"). Such Collateral Deposit shall be in the amount that Surety, in its sole discretion, in Good Faith deems sufficient to collateralize and hold it harmless from and against any and all potential liability for Loss, whether such liability is contingent or noncontingent, disputed or undisputed, and whether or not Surety shall have established a reserve or made any payments thereof.[35]

United Fire made a valid and enforceable demand for collateral security under the terms of this provision in the amount of $12,950,000.00.[36] Defendants ignored their promise and failed to post collateral with United Fire. Now, after United Fire has incurred much of the loss without the benefit of the promised collateral security, the amount it now needs to protect itself against future anticipated losses and expenses is $9,531,140.33.[37]

---

[35] 2020 Indemnity Agreement at ¶ SIXTH.
[36] Geer Decl. at ¶ 8 and Ex. 5 thereto.
[37] Id. at ¶ 9 and Ex. 6 thereto.

### B. An order of specific performance is necessary as no other adequate remedy at law exists.

An order of specific performance requires that no adequate remedy at law exist. O.C.G.A. § 23-2-130. Here, an order of specific performance is necessary as there is no other remedy available at law for Defendant's failure to provide United Fire with collateral security to which United Fire is entitled to receive under the terms of the 2020 Indemnity Agreement. The only alternative that Great Midwest has at this time to specific performance would be to wait for the anticipated losses to accrue and then seek additional enforcement of its indemnity rights.

The contractual requirement that Defendants undertook, to post collateral security upon demand by United Fire, was bargained for in exchange for United Fire extending its surety credit on behalf of the named Indemnitors, including ML Builders. The only remedy that would satisfy United Fire's bargained for position in this transaction is an order of specific performance. Additionally, Defendants' already agreed "that the failure of Indemnitors to make any Collateral Deposit demanded by Surety shall cause irreparable harm to Surety for which Surety has no adequate remedy at law, and the Surety shall be entitled to preliminary and final injunctive relief for specific performance of Indemnitors' Collateral Deposit obligation."[38]

Defendants agreed to provide collateral upon demand in exchange for United Fire's execution of these bonds, and then agreed that United Fire would be irreparably

---

[38] 2020 Indemnity Agreement at ¶ SIXTH.

harmed should they not provide the collateral. Great Midwest is entitled to specific performance on this contract obligation.

### C. United Fire is entitled to an order of specific performance, requiring Defendants to post collateral security in the amount of $9,531,140.33.

Specific performance of United Fire's right to the collateral demand provides United Fire with the security bargained for in the 2020 Indemnity Agreement. Indemnitors' failure to post the collateral demanded of them is a breach of the agreement entitling United to an order of specific performance in the amount of $9,531,140.33, which is less than the amount of its demand and calculated to only be so much as United Fire's future anticipated losses and expenses.

## CONCLUSION

Defendants have failed to assert any meritorious defense to avoid liability for their breach of the 2020 Indemnity Agreement. Pursuant to the terms of agreement, United Fire is entitled to 1) a judgment against Defendants in the amount of $7,580,822.02, which reflects the loss and expenses incurred by United as a result of issuing the Bonds, and 2) an order of specific performance requiring Defendants to deposit collateral security, pursuant to the terms of the 2020 Indemnity Agreement, in the amount of $9,531,140.33 to protect United Fire from additional anticipated losses and expenses on the Bonds.

Respectfully submitted, this 28th day of October, 2024.

/s/ David A. Harris
Georgia Bar No. 668708

/s/ Mark L. Pickett, Jr.

Georgia Bar No. 814645

*Counsel for United Fire & Casualty Company*

BOVIS, KYLE, BURCH & MEDLIN, LLC
200 Ashford Center North, Suite 500
Atlanta, Georgia  30338-2668
Telephone:	(770) 391-9100
Facsimile:	(770) 668-0878
E-mail:	dah@boviskyle.com
	mpickett@boviskyle.com