IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **UNITED FIRE & CASUALTY** | : | |
| **COMPANY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **No. 5:23-CV-484 (CAR)** |
| **v.** | : | |
| | : | |
| **BUDGET SERVICES & SUPPLIES,** | : | |
| **LLC; WILLIE J. BILLINGSLEA, JR.;** | : | |
| **and CORA BILLINGSLEA;** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff United Fire & Casualty Company ("United Fire") filed this breach of contract action against Defendants Budget Services & Supplies, LLC ("Budget Services"), Willie J. Billingslea, Jr., and Cora Billingslea, seeking damages and specific performance from Defendants for losses and expenses arising from an indemnity agreement. United Fire and Defendants have filed cross motions for summary judgment. Having carefully considered the parties' arguments, the record, and applicable law, the Court **GRANTS** United Fire's Motion for Summary Judgment [Doc. 16] and **DENIES** Defendants' Motion for Summary Judgment [Doc. 21].

1

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[2] Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[3] When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.[4]

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[5] If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings

---

[1] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[3] *See id.* at 249–52.

[4] *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

[5] *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).

and present specific evidence showing that there is a genuine issue of material fact.[6] This evidence must consist of more than mere conclusory allegations or legal conclusions.[7]

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion.[8] "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."[9] The Court will consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.[10]

## BACKGROUND[11]

Defendant Willie J. Billingslea, Jr. is the managing member of Defendant Budget Services,[12] a company that performs custodial and ground maintenance services, and light construction work largely through United States government contracts.[13] Willie[14]

---

[6] See Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324–26.

[7] See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

[8] See Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005).

[9] United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation modified).

[10] See Am. Bankers Ins. Grp., 408 F.3d at 1331.

[11] Defendants did not file a response to United Fire's Statement of Undisputed Material Facts pursuant to Local Rule 56. See M.D. Ga. L.R. 56. All material facts contained in United Fire's "statement which are not specifically controverted by specific citation to particular parts of materials in the record" are deemed admitted, "unless otherwise inappropriate." See id.

[12] Defendants' Statement of Undisputed Materials Facts [Doc. 21-1 ¶ 1].

[13] Deposition of Willie J. Billingslea, Jr. at 13:18–23, 15:7–13 [Doc. 18].

[14] For clarity purposes, the Court will refer to the people named in this Order by their first names.

started Budget Services after serving in the United States Marine Corps for twenty years.[15]

Shawn McCullough and Jonathan McCullough are the managing members of ML Builders, LLC ("ML Builders"),[16] a company that provides construction and facility maintenance services at commercial and government installations.[17] While working as a recruiter for the Marines in the early 1990s, Willie met Shawn and Jonathan when they were high school students, and Willie recruited Jonathan to enlist in the Marines.[18] Years later, the men reconnected at a conference sometime around 2017.[19]

After reconnecting, Willie, Shawn, and Jonathan decided to go into business together. On June 12, 2018, ML Builders and Budget Services entered into a joint venture agreement and formed ML Builders — Budget Services JV LCC ("Joint Venture") to bid on, and "if successful, to enter into . . . certain construction services for the United States Department of Veteran Affairs[.]"[20] Federal law requires contractors on certain government projects, like the ones the Joint Venture planned to bid on, to obtain surety bonds to ensure payment and performance.[21]

---

[15] Willie J. Billingslea, Jr. Depo. at 9:18–20, 10:6–9, 13:7–12.

[16] Doc. 21-1 ¶ 2.

[17] Joint Venture Agreement [Doc. 21-4 at 1].

[18] Willie J. Billingslea, Jr. Depo. at 11:4–11, 22:15–23:1.

[19] Willie J. Billingslea, Jr. Depo. at 23:22–24:9, 25:4–11.

[20] Doc. 21-1 ¶ 3; Doc. 21-4 at 1.

[21] *See, e.g., U.S. ex rel. Cap. Computer Grp., LLC v. Gray Ins. Co.,* 453 F. App'x 905, 906 (11th Cir. 2011) (citing 40 U.S.C. § 3131(b)(2)).

In December 2019, Kenny Albert was a bond account agent with Van Meters Insurance/Houchens Insurance Group who "was responsible for finding a surety that could provide bonds" to the Joint Venture.[22] Kenny connected the Joint Venture with Plaintiff United Fire, a surety that issues bonds.[23] Before United Fire would issue any bonds to the Joint Venture, it required the execution of a general indemnity agreement.[24] The first version of this indemnity agreement was signed on December 4, 2019 ("2019 Agreement"), by the Joint Venture, ML Builders, Defendant Budget Services, Shawn McCullough, Jonathan McCullough, Jacqueline McCullough, Defendant Willie J. Billingslea, Jr., and Defendant Cora Billingslea, Willie's wife.[25] The 2019 Agreement made each of the signing parties indemnitors but allowed United Fire to issue bonds only to the Joint Venture as the principal.

Shawn and Jonathan then decided they wanted ML Builders to be able to bid on projects separately from the Joint Venture and sought a revised indemnity agreement that allowed for bonds to be issued to ML Builders as the principal. Six days before the Agreement was signed, on January 15, 2020, Kenny sent Willie and Shawn the following email:[26]

---

[22] Doc. 21-1 ¶¶ 5, 6.
[23] *Id.* ¶ 7.
[24] *Id.* ¶ 8.
[25] 2019 Agreement [Doc. 21-6 at 4–5].
[26] Kenny Albert Email [Doc. 21-7 at 1].

**From:** Kenny Albert <kalbert@higusa.com>
**Sent:** Wednesday, January 15, 2020 10:09 AM
**To:** Shawn Mccullough <shawn@mlbuilderssc.com>; Willie Billingslea <willie@budgetsvcs.com>
**Cc:** Melissa Propst <mpropst@higusa.com>
**Subject:** ML Builders/Budget JV - New General Indemnity Agreement

Shawn,

Please give me a call to discuss at your earliest convenience. We are in the process of getting ML Builders, LLC set up with United Fire Group. Attached you will find a new General Indemnity Agreement The new GIA is worded, so we can use the same GIA for the JV, or each company separately. This gets rid of the need to have separate GIA's prepared and signed for each entity. So, by signing this one, we can use it to write bonds for the JV, or ML Builders by themselves, or Budget Services by themselves. Please let me know if I can provide any additional clarification. Once we have a signed copy we can issue the Salisbury VAMC P&P Bond for ML Builders, LLC. Please send the original copy back to me at the address listed below, preferably (FedEx or UPS) so we can track the package. In addition to signing the new GIA we will need the Joint Venture to set up a separate checking/bank account as discussed. Again, please let me know if you have any questions or concerns.

Thanks again,

Kenny

**Kenny Albert | Surety Bonds / Commercial Insurance**
**Van Meter Insurance Group**
*109 International Drive, Suite 101*
*Franklin, TN 37067*
**Direct:** (615) 764-4398 | **Mobile:** (615) 801-7873

On January 21, 2020, the same parties to the 2019 Agreement signed a revised indemnity agreement ("Agreement") that allowed United Fire to issue bonds to the Joint Venture, "or either ML Builders or Budget Services as individual contractors."[27] There is no evidence in the record that Willie asked any questions or expressed any concerns about the revised terms of the Agreement before signing.

---

[27] Doc. 21-1 ¶ 10; Agreement [Doc. 21-3 at 5–6].

The Agreement defines "Indemnitors" as "[a]ll Persons who sign or whose authorized representatives sign this Agreement[.]"[28] The Agreement further provides:

> Indemnitors shall exonerate, hold harmless, indemnify, and keep indemnified [United Fire] from and against any and all Loss and/or liability for Loss. Indemnitors agree to immediately reimburse [United Fire] in the amount of any payment of Loss made by [United Fire], plus interest from the date of [United Fire's] payment.[29]

"Loss" is defined as "any and all payments, expenses or liability incurred or anticipated by [United Fire], including but not limited to attorney's fees, consultant's fees, expert fees, and court costs arising from or related to any Bond, any Claim, [and] enforcing any of [United Fire's] rights under this Agreement[.]"[30] "Bond" is defined as "any surety bond . . . given, procured, provided . . . by [United Fire] in the name(s) or at the request of any Indemnitor, solely or as a co-venturer with others[.]"[31] In addition, vouchers or other evidence of "payments made by [United Fire] shall be prima facie evidence of the amount of Loss and of the fact and amount of Indemnitors' liability to [United Fire]."[32]

---

[28] Agreement ¶ 2.d.
[29] *Id.* ¶ 5.
[30] *Id.* ¶ 2.h.
[31] *Id.* ¶ 2.e.
[32] *Id.* ¶ 5.

United Fire has the sole discretion to issue bonds under the Agreement.[33] United Fire's "procedure is to obtain the indemnitor's financial statements to ensure that the indemnitor has the financial stability to complete the work" before issuing any bonds.[34]

In 2020, United Fire began issuing bonds to ML Builders. At some point, ML Builders began defaulting on the projects, and claims were asserted on the bonds.[35] United Fire paid claims on these bonds totaling $6,882,989.85[36] and incurred expenses, including attorneys' fees and consultant fees, totaling $697,832.17 as a result of the claims.[37] United Fire has a reserve to "fund additional losses and expenses" on the bonds totaling $9,531,140.33.[38]

United Fire's internal review of how ML Builders's "account was handled revealed multiple errors," including:

> (1) [United Fire] should have been quicker to stop issuing bonds after financial statements had not been provided, (2) [United Fire] should have restricted capacity when it learned that ML Builders made minimal progress on open jobs, (3) [United Fire] should not have continued to trust Kenny Albert after he moved ML Builders' account without notice,[39] and

---

[33] Doc. 21-1 ¶ 16.

[34] *Id.* ¶ 18.

[35] United Fire's Statement of Undisputed Material Facts [Doc. 16-2 ¶ 15]. There is scant evidence in the record as to what transpired.

[36] This is the total as of the date of United Fire's filing of its Statement of Undisputed Material Facts. [Doc. 16-2 ¶ 18].

[37] *Id.* ¶ 19.

[38] *Id.* ¶ 20.

[39] In 2022, Kenny Albert moved ML Builders' account to Nationwide, without informing United Fire, in order to obtain additional surety credit. Doc. 21-1 ¶ 35.

(4) [United Fire] was too comfortable with third-party indemnification and relied [too] heavily on the financial strength of Willie Billingslea.[40]

United Fire never issued any bonds to the Joint Venture or Budget Services; all bonds for which United Fire seeks recovery were issued exclusively to ML Builders.[41] United Fire seeks a judgment for $7,580,822.02 and an order of specific performance requiring Defendants to deposit collateral security in the amount of $9,531,140.33.[42]

Rather than pursuing ML Builders or the McCulloughs for indemnification, United Fire pursued Defendants. On May 15, 2023, United Fire sent Defendants a letter "notifying them that claims had been asserted on the bonds" and demanding they "exonerate, hold harmless, indemnify and keep indemnified United Fire" under the Agreement.[43] On October 10, 2023, United Fire sent Defendants a letter demanding they deposit with United Fire $12,950,000.00 "to collateralize United [Fire] and hold it harmless from and against any and all potential liability for loss on the Bonds."[44] Defendants have not reimbursed United Fire or deposited any collateral as detailed in the Agreement.[45]

---

[40] Doc. 21-1 ¶ 36.

[41] *Id.* ¶¶ 37–39.

[42] Brief in Support of United Fire's Motion for Summary Judgment [Doc. 16-1 at 16].

[43] Doc. 16-2 ¶ 15.

[44] *Id.* ¶ 16.

[45] *Id.* ¶¶ 17, 22.

## DISCUSSION

United Fire seeks summary judgment on its claims that Defendants defaulted on their obligations to indemnify and deposit collateral for United Fire against claims asserted under surety bonds issued to ML Builders. Defendants seek summary judgment arguing the Agreement is unenforceable because it (1) lacks mutual assent, (2) lacks consideration and contains an illusory promise, and (3) is contrary to Georgia public policy. The Court finds the Agreement is enforceable and grants summary judgment to United Fire.

In Georgia,[46] "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."[47] "[T]he party asserting the existence of a contract has the burden of proving its existence and its terms."[48] "Generally, contract construction is a question of law for the court."[49] "The cardinal rule of contract construction is to ascertain the intention of the parties."[50] "When

---

[46] The Agreement contains an Iowa choice of law provision, but the parties cite to Georgia law in their briefs. In response to the Court's Order for Supplemental Briefs, the parties agreed to have Georgia law govern Plaintiff's claims against Defendants. Response to Court Order [Doc. 29 at 1]. Thus, the Court will apply Georgia law. *See Neb. Plastics, Inc. v. Harris*, 236 Ga. App. 499, 501 (1999) (applying Georgia law to contract, where neither party asserted choice of law provision in contract and parties agreed to application of Georgia law).

[47] O.C.G.A. § 13-3-1.

[48] *Sidhom v. Boutros*, 358 Ga. App. 432, 434 (2021) (quoting *Sherman v. Dickey*, 322 Ga. App. 228, 232 (2013)).

[49] *Unified Gov't of Athens-Clarke Cnty. v. Stiles Apartments, Inc.*, 295 Ga. 829, 832 (2014) (citing O.C.G.A. § 13-2-1).

[50] O.C.G.A. § 13-2-3.

the terms of a contract are clear and unambiguous, the reviewing court looks only to the contract itself to determine the parties' intent."[51]

### 1. Mutual Assent

Defendants first argue they believed that they were not required to indemnify United Fire for bonds issued solely to ML Builders, and therefore the Agreement lacks mutual assent. But their subjective belief is insufficient to override the Agreement's plain language.

"A valid contract requires mutual assent, and if such assent is lacking, the contract is not enforceable."[52] "In determining if parties had the mutual assent or meeting of the minds necessary to reach agreement, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent."[53]

Defendants point to Kenny Albert's January 15, 2020 email addressing the Agreement to show no valid agreement existed. Defendants contend Kenny's email substantiates their belief that each party would be liable solely for the bonds specifically issued to that respective party, and Defendants would not be liable for bonds issued

---

[51] *Stiles Apartments, Inc.*, 295 Ga. at 832 (citing *Lloyd's Syndicate No. 5820 v. AGCO Corp.*, 294 Ga. 805, 812 (2014)).

[52] *Sidhom*, 358 Ga. App. at 434–35 (citing O.C.G.A. § 13-3-1) (citing *TranSouth Fin. Corp. v. Rooks*, 269 Ga. App. 321, 324 (2004)).

[53] *Id.* at 435 (quoting *Hart v. Hart*, 297 Ga. 709, 711 (2015)).

solely to ML Builders. But this parol evidence, while permissible to consider, is unconvincing.

"Although parol evidence cannot be used to contradict or vary the terms of a valid written agreement, parol evidence may be used to show no valid agreement ever went into existence."[54] As such, "the circumstances surrounding the making of the contract, such as correspondence and discussions" may be relevant in deciding if there was mutual assent to an agreement.[55] Mutual assent is to be judged by "overt acts and words [not] by the hidden, subjective or secret intention of the parties."[56]

Kenny's email is insufficient to establish a lack of mutual assent or to create a genuine issue of material fact as to mutual assent. Kenny's email stated, in part:

> The new [Agreement] is worded, so we can use the same [Agreement] for the [Joint Venture], or **each company separately**. This gets rid of the need to have separate [general indemnity agreements] prepared and signed for each entity. So, by signing this one, **we can use it to write bonds for the [Joint Venture], or ML Builders by themselves, or Budget Services by themselves**.[57]

---

[54] *Extremity Healthcare, Inc. v. Access to Care America, LLC*, 339 Ga. App. 246, 254 (2016) (quoting *Moreno v. Smith*, 299 Ga. 443, 445 (2016)).

[55] *Sidhom*, 358 Ga. App. at 435 (quoting *Hart*, 297 Ga. at 711).

[56] *Id.* (quoting *Extremity Healthcare*, 339 Ga. App. at 252).

[57] Doc. 21-7 at 1 (emphasis added). The text is altered because there are abbreviations used in the original email that are not used in this Order. The unaltered email is included in the Background section of this Order.

Contrary to Defendants' assertion, the email did not communicate to a reasonable person in Defendants' shoes that Defendants would only be liable for bonds issued to them.[58] Indeed, it appears Defendants conflate two separate issues: (1) the principal of the bonds, i.e., to whom bonds may be issued, with (2) the indemnitors, i.e., the entities who are liable for those bonds. Kenny's email solely addressed who the principals would be; it did not state that each party would only be liable for its own bonds.[59] In fact, the email contained no mention of liability at all.

Defendants may have sincerely believed they were not liable under the Agreement for bonds issued to ML Builders, but no evidence shows they communicated their subjective understanding to United Fire.[60] In *Sidhom v. Boutros*, the Georgia Court of Appeals found a genuine issue of material fact existed as to mutual assent based on evidence that on the same day the parties signed a contract, they made an oral agreement

---

[58] *See Hart*, 297 Ga. at 711. Defendants further argue that because Kenny's email states the Agreement "[got] rid of the need to have separate [general indemnity agreements]," the alternative would have been three separate indemnity agreements for each party; thus, Kenny's email manifested an intent for each party to be liable for their own bonds. This argument fails. Defendants cannot rely on nonexistent, hypothetical alternative indemnity agreements to explain how the Agreement functions. This alternative did not come to fruition, nor is there evidence it could have.

[59] Regardless, "[r]eliance upon the representations made by the other party is not grounds for cancellation, reformation or the defeat of an action based on the contract absent proof of emergency, fraud of fiduciary or confidential relationship with the party making the representation." *Malin v. Servisco, Inc.*, 172 Ga. App. 418, 418 (1984) (citation omitted).

[60] Nor is the Court convinced by Defendants' argument that United Fire's decision to seek payment of the bond premiums from ML Builders "indicates an awareness that each indemnitor was responsible for its own bonds." Doc. 24 at 6. United Fire's decision to seek the premium payments from the principals on the bonds first before seeking payment from the other signatories to the Agreement indicates no such "awareness."

with contradictory terms. Unlike in *Sidhom*, here, the record contains no evidence Defendants communicated their subjective understanding of their liability to United Fire before signing the Agreement. Thus, a reasonable person in United Fire's position would have no reason to believe Defendants had a different understanding of their liability than the one clearly stated in the Agreement.[61]

Simply put, Defendants were unilaterally mistaken about the Agreement, which is not a defense against contractual liability.[62] Moreover, the terms of the Agreement, which Defendants assented to through their signatures, were clear, and Kenny's one email is insufficient to create a genuine issue of material fact on, let alone prove, the issue of mutual assent. "A person who signs a contract without reading it is bound to its terms[.]"[63] Therefore, the Agreement is not unenforceable for lack of mutual assent.

## 2. Consideration & Illusory Promise

Defendants next argue the Agreement lacks consideration because (1) Defendants did not receive a benefit from United Fire's promise, and United Fire did not suffer a detriment, and (2) United Fire's promise to issue bonds is illusory. The Court disagrees.

Georgia courts have "consistently upheld the validity and enforceability of indemnification agreements executed in connection with the issuance of surety bonds."[64]

---

[61] *See Sidhom*, 358 Ga. App. at 435 (quoting *Hart*, 297 Ga. at 711).

[62] *Malin*, 172 Ga. App. at 418 (citation omitted).

[63] *Id.* (citation omitted).

[64] *Anderson v. U.S. Fid. & Guar. Co.*, 267 Ga. App. 624, 627 (2004) (collecting cases).

"[W]here there is consideration to support the contract, 'courts do not inquire into the adequacy of contract consideration[.]'"[65] "Slight consideration is sufficient to sustain a contract."[66]

The Agreement here is supported by consideration. First, under Georgia law, indemnity agreements related to the issuance of surety bonds, like the one at bar, are "consistently upheld" as valid and enforceable.[67] Defendants argue the Agreement lacks consideration because they were not issued any bonds under the Agreement; that is, they did not receive any "benefit" from United Fire.[68] But "consideration need not be a benefit accruing to the promisor[; it] may be a benefit accruing to another."[69] "Indeed, a contract may be supported by adequate consideration as against a promisor under it who never receives any part of the consideration. This is hornbook law—the most elementary."[70] Here, United Fire issued surety bonds to ML Builders; thus, ML Builders received a benefit under the Agreement, and the Agreement does not fail for lack of consideration.

---

[65] *ALR Oglethorpe, LLC v. Fid. Nat'l Title Ins. Co.*, 361 Ga. App. 776, 781 (2021) (citation omitted).

[66] *Franklin v. UAP/GA AG. CHEM, Inc.*, 237 Ga. App. 71, 73 (1999) (citation omitted).

[67] *See Anderson*, 267 Ga. App. at 627 (collecting cases).

[68] Defendants also argue the Agreement lacks consideration because any detriment United Fire suffered was not in reliance on Defendants' promise because they did not promise to indemnify losses on bonds issued to ML Builders. Although Defendants have argued they did not subjectively believe they were liable for ML Builder's bonds, they have not contested that the signed Agreement unambiguously states they are liable. Because the Court has already found there was mutual assent to the Agreement, and no one has contested the Agreement's unambiguous language that all Indemnitors are liable for all bonds issued to any Indemnitor, this argument fails.

[69] *Fisher v. Toombs Cnty. Nursing Home*, 223 Ga. App. 842, 845 (1996) (citation modified) (citing O.C.G.A. § 13-3-42(d)) (citing *Owens v. Serv. Fire Ins. Co. of N.Y.*, 90 Ga. App. 553, 556 (1954)).

[70] *Thompson v. Allstate Ins. Co.*, 285 Ga. 24, 28 (2009) (quoting *Marsh v. Chrysler Ins. Co.*, 169 Ga. App. 639, 640 (1984)) (citation modified).

Further, the Agreement is not unenforceable due to United Fire's alleged illusory promise. "[U]nder Georgia law, '[a] promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.'"[71] "Furthermore, an 'illusory promise' exists when 'words of promise . . . by their terms make performance entirely optional with the "promisor" whatever may happen, or whatever course of conduct in other respects he may pursue.'"[72]

The Agreement grants United Fire the unilateral discretion to issue bonds—meaning its performance would be "entirely optional" under the Agreement.[73] But the test of mutuality is applied at the time of enforcement;[74] and at the time United Fire filed suit, it had issued bonds under the Agreement. Because United Fire had actually performed its obligation under the Agreement, its promise is no longer illusory.[75]

---

[71] *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1373–74 (11th Cir. 2005) (quoting *Kemia, Inc. v. Williams Investigative & Sec. Servs, Inc.*, 215 Ga. App. 194 (1994)).

[72] *Id.* at 1373 (quoting *Kemia, Inc.*, 215 Ga. App. at 194).

[73] *Id.* (quoting *Kemia, Inc.*, 215 Ga. App. at 194).

[74] *Id.* (quoting *Kemia, Inc.*, 215 Ga. App. at 194); *Rushing v. Gold Kist, Inc.*, 256 Ga. App. 115, 119 (2002) (citations omitted).

[75] *See Rushing*, 256 Ga. App. at 119 (citations omitted).

### 3. Public Policy

Finally, Defendants contend the losses on the issued bonds are the result of United Fire's own negligence by failing to exercise due diligence; therefore, the Agreement is unenforceable because it contravenes Georgia public policy. The Court is unpersuaded.

United Fire's alleged negligence in issuing the bonds is insufficient to render the Agreement unenforceable under Georgia public policy. Defendants pointed to no case, nor could this Court find a case in which Georgia courts have found public policy warranted releasing a defendant from their contractual indemnification obligations because of the alleged negligent actions of a surety when the surety had no duty of due diligence under the contract. "[T]he power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt."[76]

The cases Defendants cite for support are wholly distinguishable as tort cases. Defendants first cite negligence cases related to indemnification for personal injuries caused by the sole negligence of another,[77] but this case is not a personal injury action. Defendants also cite fraud cases discussing whether a surety exercised due diligence to

---

[76] *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 337 (1985) (quoting *Equitable Loan & Sec. Co. v. Waring*, 117 Ga. 599 (1903)).

[77] *See Ryder Integrated Logistics Inc. v. BellSouth Telecomms., Inc.*, 281 Ga. 736, 737 (2007).

protect its own interests by continuing to negligently issue bonds.[78] But United Fire's due diligence is not at issue because here United Fire had no duty of due diligence under the Agreement, and Defendants did not bring an action for fraud or negligence.[79] United Fire's obligations to Defendants are not governed by tort law, but by the unambiguous terms of the contract they signed. It is not this Court's "role to rewrite legally enforceable contracts or to legislate from the bench."[80] "It is fundamental that matters of public policy are entrusted to the General Assembly, [and] not this court."[81] Thus, Georgia public policy does not render the Agreement unenforceable.

### 4. Damages

Having found the Agreement is enforceable, the Court must now determine the damages. The Agreement provides that "vouchers or other evidence" of United Fire's payments on claims made for a Loss "shall be prima facie evidence of the amount of the Loss and of the fact and amount of Indemnitors' liability to [United Fire]. All such

---

[78] *See Citizens Bank of Ball Ground v. Johnson*, 191 Ga. App. 155, 158 (1989).

[79] *See Travelers Indem. Co. v. A.M. Pullen & Co.*, 161 Ga. App. 784, 798 (1982) (finding there was a question of fact as to whether the surety exercised reasonable care to protect its own interests in an action for fraud and negligence). The Agreement does not obligate United Fire to exercise due diligence when issuing bonds. Under Georgia law, when a contract "by its express terms grants a party absolute or uncontrolled discretion in making a decision," like the unilateral discretion to issue bonds granted to United Fire under the Agreement, "then no duty of good faith is implied as to that decision." *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 453 (2006) (citation omitted)).

[80] *BPG Inspection, LLC v. Omstead*, 367 Ga. App. 128, 135 (2023).

[81] *Id.* at 136 (quoting *Smith v. Robinson*, 355 Ga. App. 159, 161 (2020)).

amounts shall bear interest at the rate of 9% per annum from the date of [United Fire's] payment until [United Fire] is fully reimbursed."[82]

United Fire submitted a declaration signed by Stephanie Geer, its Vice President of Surety Claims.[83] Attached to the declaration is a loss report "which reports amounts United Fire has currently held in reserve ($9,531,140.33), paid to resolve bond claims ($6,882,989.85), and paid as expenses, including attorneys' fees and consultant fees, as a result of the claims on the bonds and the claims asserted under the terms of the 2020 Indemnity Agreement ($697,832.17)."[84]

By signing the Agreement, Defendants agreed that such "other evidence" of payments would be prima facie evidence of the amount of Indemnitors' liability to United Fire.[85] Defendants have not disputed this evidence, nor have they submitted any evidence contradicting the amounts requested by United Fire. For these reasons, the Court finds United Fire is entitled to a judgment in the amount of $7,580,822.02, that being the total amount paid to resolve claims on the bonds plus expenses paid, including attorneys' fees.

### 5.  Specific Performance

United Fire also contends it is entitled to an order of specific performance requiring Defendants to post collateral security. Defendants generally argue the

---

[82] Agreement ¶ 5.
[83] Declaration of Stephanie Geer [Doc. 16-3 ¶ 2].
[84] Geer Decl. ¶ 9.
[85] Agreement ¶ 5.

Agreement is invalid for the reasons explained above, but they do not specifically contest United Fire's entitlement to specific performance or argue United Fire has an adequate remedy at law. "As a general rule, a party to a contract may seek specific performance of a contract upon a showing that damages recoverable at law would not constitute adequate compensation for another parties' nonperformance."[86]

Here, United Fire has no adequate remedy at law for its claim for the deposit of collateral security. It appears Georgia courts have not ruled on this exact issue, but other courts, including one in this district, "have concluded that sureties are ordinarily entitled to specific performance of collateral security clauses."[87] "The rationale for this conclusion is that although damages might be available to the surety in the future, the surety 'bargained for a collateral security clause to protect it from the impending risks of liability once a claim had been made on the bond,' and the availability of damages after trial would not protect a surety from a present risk of exposure."[88]

As explained above, the Agreement is valid and enforceable, and its language is unambiguous. Having found Defendants are bound by the Agreement, and because

---

[86] *Bagwell v. Trammel*, 297 Ga. 873, 875 (2015) (citing O.C.G.A. § 23-2-130).

[87] *Hanover Ins. Co. v. Holley Constr. Co. & Assocs.*, No. 4:11-CV-41 (CDL), 2012 WL 398135, at *5 (M.D. Ga. Feb. 7, 2012) (collecting cases); *see also Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, 518 F. App'x 899, 902–03 (11th Cir. 2013) (holding that a surety was entitled to specific performance of an irrevocable letter of credit based on an indemnification agreement executed in connection with the issuance of surety bonds).

[88] *Hanover Ins. Co.*, 2012 WL 398135, at *5 (quoting *Safeco Ins. Co. of Am. v. Lake Asphalt Paving & Constr., LLC*, No. 4:10-CV1160 CAS, 2011 WL 3439129, at *6 (E.D. Mo. Aug. 5, 2011)).

United Fire has no adequate remedy at law, the Court finds United Fire is entitled to specific performance, and Defendants are ordered to deposit $9,531,140.33 in collateral security pursuant to the terms of the Agreement.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** United Fire's Motion for Summary Judgment [Doc. 16] and **DENIES** Defendants' Motion for Summary Judgment [Doc. 21]. United Fire is entitled to a judgment of $7,580,822.02, and Defendants are ordered to deposit $9,531,140.33 in collateral security pursuant to the terms of the Agreement.

**SO ORDERED**, this 1st day of July, 2025.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT